FILED

2022 Mar-04  PM 04:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| LAURIE ANN PLUMLEY BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 7:18-cv-01785-SGC |
| MERCEDES-BENZ U.S. ) | |
| INTERNATIONAL, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION[1]

Plaintiff Laurie Ann Plumley Brown initiated this matter by filing a

complaint against Mercedes-Benz U.S. International, Inc. ("MBUSI"). (Doc. 1).[2]

Brown asserts claims for race discrimination under Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e ("Title VII"), and the Civil Rights Act of 1866, 42

U.S.C. § 1981, as well as age discrimination under the Age Discrimination in

Employment Act, 29 U.S.C. § 621 ("ADEA"), and the Alabama Age

Discrimination in Employment Act, Ala. Code § 25-1-20, *et seq* ("AADEA").

Brown also asserts a claim of retaliation pursuant to Title VII, § 1981, the ADEA,

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 11).

[2] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __).

and the AADEA.  Presently pending is MBUSI's motion for summary judgment, which is fully briefed and ripe for adjudication.  (Docs. 63-65; Docs. 68-70).  As explained below, MBUSI's motion for summary judgment is due to be granted in its entirety.

## I.     Standard of Review

Under Rule 56 of the *Federal Rules of Civil Procedure*, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 323.  Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.  *See id.* at 324.

The substantive law identifies which facts are material and which are irrelevant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor

of the non-movant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  *See id.* at 249.

## II. Material Facts

Brown, a White female born in 1958, has worked for many years in the field of human resources.  (Doc. 65-1 at 4; Doc 68 at 3).  In February 2014, she interviewed for and was hired as a Team Relations Specialist ("TRS") for North American On-Site, LLC ("NAOS").  (Doc. 68 at 3).[3]  NAOS is a staffing contractor which provided contract employees, including the human resources TRS position, to MBUSI.  (Doc. 65-4 at 11).  Brown held the TRS role throughout her employment with NAOS.  (Doc. 68 at 3).

A TRS works with other team members onsite at MBUSI.  (Doc. 65-4 at 13).  Among other things, a TRS advocates for team members, helps to facilitate relationships and to resolve conflict between team members and management, and provides information to team members about company policies, guidelines, and benefits.  (Doc. 65-4 at 13).  The TRS position is one of great autonomy, and it includes spending a considerable amount of time on the plant floor to build

---

[3] NAOS was previously a party to this lawsuit but has been dismissed.  (Doc. 51).

relationships with team members and management, as well as to stay aware of pending and potential issues.  (Doc. 65-4 at 13; Doc. 65-8 at 7-8).

Both MBUSI employees and NAOS employees filled TRS positions for MBUSI, with the NAOS TRS positions described as "contingent".  (Doc. 65-4 at 11).  Typically, an MBUSI TRS interacts with MBUSI team members, and an NAOS TRS interacts with NAOS team members.  (Doc. 65-4 at 13).  The differences between the roles are "minor," however, and there is often overlap between the positions. (Doc. 65-4 at 13).  MBUSI Team Relations Senior Manager David Olive (White male, born 1967) described the roles as "interchangeable." (Doc. 65-4 at 13).

When Brown applied to NAOS in 2014, Olive interviewed her. (Doc. 65-4 at 16).  He did not object to NAOS hiring Brown, and it hired her.  (Doc. 65-4 at 16).  In 2014, MBUSI hired Zina Cooper (Black female, born 1967) as the Team Relations Manager after Olive was promoted to Team Relations Senior Manager. (Doc. 65-4 at 9, 20; Doc. 65-5 at 5).   As Team Relations Manager, Cooper managed both MBUSI and NAOS TRSs, including Brown.  (Doc. 65-6 at 6).

As Brown's supervisor, Cooper found Brown to be an average employee who did not take initiative or step outside of her comfort zone.  (Doc. 65-6 at 8-10).  Cooper also observed Brown did not work independently and would often ask others to assist with challenging tasks.  (Doc. 65-6 at 21).   Cooper sometimes

4

found Brown to be argumentative, though she could not recall a particular incident. (Doc. 65-6 at 9).   At times, Cooper received feedback from other personnel indicating Brown spent less time on the plant floor than other TRSs.  (Doc. 65-6 at 10).   However, Cooper never disciplined or formally addressed these issues with Brown because Cooper believed they did not rise to a formal disciplinary level. (Doc. 65-6 at 9).

MBUSI occasionally had open positions for permanent, MBUSI-employed TRSs.   (Doc. 64 at 7-16).   It generally posted those positions internally first (meaning MBUSI employees had priority to apply), but it would typically post the positions both internally and externally.  (Doc. 64 at 6; Doc. 65-4 at 12; Doc. 65-8 at 22).   NAOS TRSs were generally eligible to apply for a permanent MBUSI position as "external" applicants.   (Doc. 65-4 at 11-12).   MBUSI has hired or "promoted" NAOS TRSs as MBUSI TRSs.   (*See* Doc. 64 at 7-16).[4]   Brown considered NAOS as an entry to a permanent MBUSI position because, when MBUSI had open positions, it often hired NAOS employees.  (Doc. 65-1 at 29). MBUSI TRSs were more highly compensated than their NAOS counterparts and had a different benefits package.  (Doc. 65-4 at 12).

---

[4] The parties sometimes refer to MBUSI's hire of NAOS team members as a "promotion." *See*, *e.g.,* Doc. 64 at 23-25.

In February 2016, MBUSI hired Frank Walls (Black male, born 1967), an NAOS TRS, as an MBUSI TRS.  (Doc. 65-4 at 26; Doc. 65-5 at 46).  Brown applied for this position, and she was interviewed but not permitted to take an assessment of her HR skills (at times, the assessment was a component of the application process). (Doc. 65-1 at 26-27).  Cooper recommended Walls for the position because he performed well in the interview process, showed initiative, made himself available to plant employees, had a calm demeanor, helped keep other employees calm in difficult situations, and had good HR experience.  (Doc. 65-6 at 17, 24, 32-33).  Olive considered Cooper's recommendation and independently came to the same conclusion to hire Walls.  (Doc. 65-4 at 26).

Ashley Jefferson (Black female, born 1983) interviewed for the position ultimately filled by Walls.  (Doc. 65-1 at 28; Doc. 65-5 at 46).  In April 2016, MBUSI hired her as an MBUSI TRS.  (Doc. 65-6 at 24).  Jefferson was an external candidate who did not have prior experience with NAOS or MBUSI.  (Doc. 65-7 at 131).  Cooper recommended Jefferson for the April 2016 open position because Jefferson had been impressive in her prior interview, had experience at Target, and had a strong HR background.  (Doc. 65-6 at 23, 31).  Olive considered Cooper's recommendation and independently came to the same conclusion to hire Jefferson. (Doc. 65-4 at 108-09; Doc. 65-9 at 3).  At this time, Olive was interested in having someone with experience outside the MBUSI plant, as he believed a new

perspective could be beneficial.  (Doc. 65-9 at 3).  While it appears this opening was not posted for application, Brown testified there may have been two open positions when Walls was hired, implying she applied for both positions at once. (Doc. 65-1 at 28-29).

In the spring of 2017, MBUSI hired William Harden (Black male, born 1975) as an MBUSI TRS.  (Doc. 65-4 at 31; Doc. 65-5 at 46).  At the time of his hiring, Harden was an NAOS TRS.  (Doc. 65-4 at 31).  Brown also applied for this position.  (Doc. 65-1 at 31). Cooper recommended Harden for the open position because he had a strong HR background, had been a career counselor in the military, showed strong initiative, had an energetic attitude, and was proactive in solving problems.  (Doc. 66-5 at 31).  Olive considered Cooper's recommendation and independently reached the same conclusion to hire Harden.  (Doc. 65-4 at 31; Doc. 65-9 at 3).

Both Brown and Brenda Jackson (Black female, born 1970, an NAOS TRS) were considered for the role ultimately filled by Harden and were disappointed they were not selected.  (Doc. 65-1 at 32; Doc. 65-5 at 46).  Following the Harden hire, Jackson regularly met with Cooper for feedback about how to improve.  (Doc. 65-6 at 33).  Cooper observed Jackson implementing the feedback, in particular by changing her notetaking, learning more, and taking more initiative on complex activities, such as various larger HR projects.  (Doc. 65-6 at 33-35).  Because of

this improvement in performance, Cooper recommended Jackson be hired for an open MBUSI TRS position in July 2017.  (Doc. 65-6 at 28, 33).  Olive considered Cooper's recommendation and independently came to the same conclusion to hire Jackson.  (Doc. 65-4 at 40).  Additionally, Olive thought Jackson had good experience and was viewed favorably by and had good rapport with other employees.  (Doc. 65-4 at 40).  Like the position filled by Jefferson, it is not clear this opening was posted for application.  Brown testified that no one applied for the job, but it was understood management was deciding between Jackson and Brown. (Doc. 65-1 at 32-33).

According to Cooper, Brown would not meet with Cooper to receive specific feedback about how to improve.  (Doc. 65-6 at 33).  Brown did, however, take on various projects following the Jackson hire.  (Doc. 65-1 at 35).

Cooper resigned from MBUSI in 2017, and Steve Shiew (White male, born 1967) replaced her as Team Relations Manager.  (Doc. 65-6 at 5; Doc. 65-8 at 5).

In late 2017, another TRS position came open.  It is unclear whether Brown applied for this position.  She testified the position was not formally posted for application but the employees knew there was an opening.  (Doc. 65-1 at 35). However, one of Shiew's emails suggests Brown did apply for this opening.  (Doc. 65-8 at 59).  Ultimately, MBUSI hired Clevette Ellis (Black female, born 1964) to fill this position.  (Doc. 65-8 at 13).  Ellis was an "external" employee who had not

8

been previously employed with MBUSI or NAOS. (Doc. 65-5 at 44-45). She had a long history of HR experience and automotive experience, including acting as the regional HR manager at an automotive logistics company. (Doc. 65-5 at 44-45; Doc. 65-8 at 15). Shiew wanted to hire Ellis for the open position, and Olive agreed. (Doc. 65-4 at 40; Doc. 65-8 at 13). Olive also noted he was interested in someone with experience and perspective outside MBUSI. (Doc. 65-4 at 40). Ellis was selected for the position in November 2017, and her hiring was announced sometime in December 2017. (Doc. 65-1 at 47; Doc. 65-8 at 60).

After Shiew announced he was hiring Ellis, Brown informed Shiew she believed she was being discriminated against because of her age. (Doc. 65-1 at 36). Shiew asked Brown for specifics regarding her comments about unfair treatment, but she did not provide specific examples. (Doc. 65-8 at 9-10). Shiew informed Brown she was not hired because management did not believe she was the best person for the job, but Ellis was considered a good hire. (Doc. 65-1 at 36; Doc. 65-8 at 9). Shiew did not investigate Brown's claim of age discrimination. (Doc. 65-8 at 9-10). On December 22, 2017, Brown filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), claiming she was denied promotions based on race and age. (Doc. 27-1).

In June 2018, MBUSI hired OJ Roberts (Black male, 52) for an open MBUSI TRS position. (Doc. 65-1 at 37; Doc. 65-5 at 46). At the time of his

hiring, Roberts was an MBUSI employee (and thus an "internal" employee) who had previously held the TRS position, at which he excelled, for seven years. (Doc. 65-4 at 42; Doc. 65-9 at 4). When this opening was posted, several internal candidates applied. (Doc. 65-9 at 4). Olive decided to hire Roberts because Roberts had been a good TRS, and Olive was glad to have him return to this position. (Doc. 65-4 at 42). The position was filled internally, and so MBUSI did not consider external candidates. (Doc. 65-8 at 14). Brown, however, testified she was a candidate for the position, but the job posting was later changed to disqualify her. (Doc. 65-1 at 37-38). The record does not clearly reflect whether this position was posted only internally before being filled.

In September 2018, Brown expressed some concerns to Shiew, though the substance of those concerns is unclear. (Doc. 65-8 at 45). Shiew acknowledged those concerns via email and asked Brown for specific instances so he could investigate the facts. (Doc. 65-8 at 45). The record does not reflect whether Brown responded.

Jack Joiner, a former MBUSI employee, believed Brown to be helpful and visible on the plant floor. (Doc. 69-1 at 1). Brown worked with Joiner to resolve any issues he brought to her. (Doc. 69-1 at 1). Joiner stated during his time with MBUSI, he observed a culture of White employees being treated differently than Black employees. (Doc. 69-1 at 1). He believed this to be pervasive throughout

10

the organization.  (Doc. 69-1 at 1).  Joiner did not, however, provide any facts or specific instances of this alleged differential treatment.

On October 19, 2018, Brown filed a second EEOC charge, in which she claimed to suffer race discrimination, age discrimination, and retaliation.  (Doc. 27-3).  Brown filed this action on October 26, 2018, and amended her complaint on June 13, 2019.  (Docs. 1, 27).  Brown resigned from NAOS effective May 13, 2019.  (Doc. 65-1 at 23).

## III.  Discussion

### A. Race and Age Claims

Title VII makes it unlawful for an employer to refuse "to hire . . . or otherwise to discriminate against any individual [ ] because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Section 1981 grants all persons the right to make and enforce contracts, "which in an employment context means protection against discrimination based on race and color." *Flores v. Devry Univ., Inc.*, 573 F. App'x 833, 835 (11th Cir. 2014); 42 U.S.C. § 1981.

The ADEA, which protects individuals between the ages of 40 and 70, makes it unlawful for an employer "to refuse to hire . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . ." 29 U.S.C. § 623(a).  The

AADEA similarly prohibits an employer from discriminating against "a worker 40 years of age and over in hiring, job retention, compensation, or other terms or conditions of employment." Ala. Code § 25-1-21.

> ### 1. Some of Plaintiff's claims are barred by the statute of limitations.

To the extent Brown is challenging each MBUSI hire outlined above, at least some of those claims are untimely.  To bring a claim in federal court under Title VII or the ADEA, an Alabama plaintiff must first file a charge of discrimination with the EEOC within 180 days of the challenged conduct.  *See Reed v. Winn Dixie, Inc.*, 677 F. App'x 607, 610 (11th Cir. 2017).  If a plaintiff does not timely file her EEOC charge, her claims are barred.  *See id.*  Here, Brown filed her first EEOC charge on December 22, 2017, which was 180 days after June 25, 2017. Accordingly, any Title VII, ADEA, and AADEA[5] claims based on conduct occurring prior to June 25, 2017, are untimely, and only the Jackson, Ellis, and Roberts hires may be challenged under these three theories.

A plaintiff is not required to exhaust administrative remedies prior to filing a discrimination action under § 1981.  *See Chandler v. Volunteers of Am., N. Ala., Inc.*, 598 F. App'x 655, 665 (11th Cir. 2015).  MBUSI characterizes this case as

---

[5] The AADEA statute of limitations is the same as that authorized by the ADEA, but AADEA plaintiffs are not required to pursue an administrative remedy before filing suit. *See* Ala. Code § 25-1-29; *Perry v. Batesville Casket Co.*, 551 F. App'x 987, 989 (11th Cir. 2014).

one concerning a failure to promote, rather than a failure to hire.  Further, MBUSI summarily concludes Brown's §1981 "promotion" claims are subject to a two-year statute of limitations and therefore any complaints about conduct occurring prior to October 26, 2016, are time-barred.  (Doc. 64 at 19). However, depending on the circumstances surrounding the promotion, Brown's claims may be subject to either a two- or four-year statute of limitations.

Section 1981 does not contain an explicit statute of limitations.  Prior to 1991, the proper statute of limitations for § 1981 claims was "the most appropriate or analogous state statute of limitations." *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987), *superseded by statute as recognized in, Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004).   In Alabama, the most analogous statute of limitations is the two-year personal injury statute of limitations contained in Ala. Code § 6-2-38.  *See Price v. M & H Valve Co.*, 177 F. App'x 1, 10 (11th Cir. 2006).  Congress altered the limitations period for civil causes of action brought under federal statutes in 1990 by passing 28 U.S.C. § 1658, which sets forth a four-year statute of limitations.  *Id.*  This four-year period, however, applies only to those § 1981 claims made possible by a post-1990 enactment.  *Jones*, 541 U.S. at 383.  If a party *could* have brought her claim prior to the 1991 amendment, the original state-related limitations period applies.  *See Price*, 177 F. App'x at 10.

Prior to 1991, a plaintiff could not use § 1981 to challenge the terms and conditions of her employment.  *See, e.g., Patterson v. McLean Credit Union*, 491 U.S. 164, 185 (1989) (*superseded by statute as recognized by Rivers v. Roadway Express*, 511 U.S. 298, 303 (1994)).  Rather, the critical inquiry at that point was "whether the employer, *at the time of the formation of the contract*, in fact intentionally refused to enter into a contract with the employee on racially neutral terms." *Id.* at 184.

Before the 1991 amendment, a plaintiff could not necessarily challenge her employer's failure to promote her.  Instead, whether a plaintiff could bring a failure-to-promote claim under § 1981 depended on "whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." *Patterson*, 491 U.S. at 185 (1989).  "Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981." *Id.*  Put simply, Brown's promotion claim is subject to the two-year statute of limitations if the promotion she sought would create a "new and distinct" relationship between MBUSI and Brown.  Otherwise, the statute of limitations is four years pursuant to § 1658.  *See Young v. Hyosung USA, Inc.*, No. 5:18-CV-507-LCB, 2020 WL 5645813 (N.D. Ala. Sept. 22, 2020).  This is a fact-specific

analysis which may consider factors such as the position's pay, duties, responsibilities, and required qualifications. *See id.*

Viewing the facts in the light most favorable to Brown, her "promotion" would have established a new and distinct relationship with MBUSI. The MBUSI TRSs were paid more and had different benefits. They were employed directly by MBUSI and were permanent, as opposed to contract, employees. They were also entitled to priority consideration for job postings as "internal" employees. Consequently, Brown's § 1981 claims are subject to a two-year statute of limitations, and her claims concerning activity before October 26, 2016, are time-barred. Thus, Brown may challenge the Harden, Jackson, Ellis, and Roberts hires under § 1981.

### 2. Brown can state a *prima facie* case of race and age discrimination.

Brown admits her race and age discrimination claims rest on circumstantial evidence (Doc. 68 at 16) and are thus subject are subject to the familiar *McDonnell Douglas* framework. *See Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1217 (11th Cir. 2019) (*McDonnell Douglas* applies to both Title VII and § 1981 claims); *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 141–42 (2000) (applying *McDonnell Douglas* to ADEA claims); *Robinson v. Ala. Cent. Credit Union*, 964 So. 2d 1225, 1228 (Ala. 2007) (adopting ADEA evidentiary framework

to AADEA claims).  The following analysis will apply equally to Plaintiff's race and age claims.

Under the *McDonnell Douglas* framework, a plaintiff must satisfy her *prima facie* case to create an inference of discrimination.  *See Lewis*, 918 F.3d at 1221. Once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision.  *Id.* This is a burden of production rather than of proof, and it can involve no credibility determination.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).  "It is important to bear in mind, however, that the defendant's burden of rebuttal is exceedingly light; the defendant need not persuade the court that it was actually motivated by the proffered reasons [but] it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983) (internal citations and quotations omitted).  So long as the employer articulates a "clear and reasonably specific" non-discriminatory basis for its actions, it has discharged its burden.  *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 258 (1981).

If an employer articulates one or more legitimate, nondiscriminatory reasons for the employment action, the plaintiff must show the proffered reason was pretext for illegal discrimination.  *Lewis*, 918 F.3d at 1221.  If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot quarrel with

16

the wisdom of the reason but instead must "meet that reason head on and rebut it." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000).  A plaintiff can show pretext by casting sufficient doubt on the employer's proffered reasons to permit a reasonable factfinder to conclude some other reason actually motivated its conduct.  *Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994).  To demonstrate pretext, the plaintiff can also show the proffered reason was false and discrimination was the real reason for the employer's action.  *St. Mary's Honor Center*, 509 U.S. at 515.

MBUSI claims Brown's *prima facie* case requires her to show (1) membership in a protected class; (2) an adverse employment action; (3) a similarly-situated comparator outside the protected class was treated more favorably than plaintiff; and (4) the plaintiff was qualified for the position.  (Doc. 64 at 20).  In *Smith v. Vestavia Hills Board of Education*, the Eleventh Circuit analyzed the plaintiff's termination claim using these factors; however, it analyzed the plaintiff's failure-to-hire claim under a different set of *prima facia* requirements.  791 F. App'x 127, 130, 132 (11th Cir. 2019).  Given the Eleventh Circuit's distinction here, the court will proceed under the more tailored failure-to-hire analysis used in *Smith*.

Because this is a failure-to-hire/promote case, Brown must establish her *prima facie* case by demonstrating: (1) she is a member of a protected class; (2) she

17

applied and was qualified for the relevant employment position; (3) she was not hired, despite her qualifications; and (4) the person who received the promotion has lesser or equal qualifications and was not a member of her protected group (or in the case of age, by someone "substantially younger," even if that individual is also over the age of 40). *See id.* at 132.[6]  The parties agree Brown was a member of a protected class and was not hired. They dispute whether Brown was qualified. Because MBUSI analyzed Brown's claim using different criteria, the parties did not truly address the fourth element, nor did they address whether Brown applied for all the positions at issue.

### a. For purposes of summary judgment, the court will assume Brown applied for the positions at issue.

When an employer uses a formal process to announce positions and identify candidates, the plaintiff must show she applied for the position. *Williams v. Waste Mgmt., Inc.*, 411 F. App'x 226, 228 (11th Cir. 2011).  "However, where an employer does not formally announce a position, but rather uses informal and subjective procedures to identify a candidate, a plaintiff need not show under the second prong that [s]he applied for the position—only that the employer had some

---

[6] *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) ("Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.").

reason to consider [her] for the post." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005).

As the moving party, MBUSI bears the burden of demonstrating Brown cannot meet an element of her *prima facie* case. As observed above, the record is not clear whether Brown applied for each of the positions at issue, and neither party addresses this issue in their briefs. Thus, for purposes of summary judgment, the court will assume Brown can put forth evidence demonstrating she applied or MBUSI had reason to consider her for the positions at issue.

### b. Brown met the initial, objective requirements for the open MBUSI TRS positions.

MBUSI argues Brown was not qualified for at least some of the open positions because MBUSI wanted an external perspective for these hires. The record, however, does not indicate external experience was an *objective* requirement for the position. *See Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1204 (11th Cir. 2013) (employee is qualified if she can show that "she satisfied an employer's *objective* qualifications") (emphasis added).

In *Kidd*, the plaintiff challenged her employer's hire of an outside candidate for an assistant accounting manager position. *Id.* at 1201. The employer did not formally announce the open position, and the plaintiff was not aware the employer was actively seeking to fill the position. *Id.* at 1200. The employer claimed it sought to hire someone with auditing experience, which the plaintiff did not have.

*Id.* at 1204. While the trial court found the plaintiff's lack of auditing experience disqualified her from the position, the Eleventh Circuit disagreed because the employer had not objectively defined or publicized the required qualifications for the open position. *Id.* The court held that "where the qualifications for the job are neither objectively verifiable nor easily obtainable or within the plaintiff's possession, the plaintiff need not satisfy this portion of the prima facie case." *Id.* (internal quotations and citations omitted). Because the employer only expressed the need for auditing experience in internal discussions, its hiring criteria was not objectively verifiable nor easily within the plaintiff's possession, and thus the plaintiff did not have to demonstrate she possessed auditing experience. *Id.*

Viewed in the light most favorable to Brown, the following facts suggest MBUSI's "requirement" that certain positions be filled by individuals with external experience was not a requirement at all: (1) there is no reference to external experience as a requirement in the job postings (Doc. 65-5 at 27-28); (2) Brown, an external candidate with internal experience, applied for the position filled by Jefferson (Doc. 65-1 at 32-33); (3) at least some evidence suggests "internal" applicants were permitted to apply for the position filled by Ellis, such as the October 27, 2017 email from Shiew asking for the names of internal applicants for the position (Doc. 65-8 at 59); (4) Brown applied for the position filled by Ellis (*Id.* at 34); and (5) there is no evidence MBUSI ever formally posted

20

or publicized its desire to hire outside the plant as a requirement of the position. MBUSI's desire for a new perspective is certainly relevant to its ultimate decision on who to hire among various candidates and may be considered at the second stage of *McDonell Douglas*. *See Kidd*, 731 F.3d at 1205. However, the proper inquiry at the *prima facie* stage is whether Brown met the initial, objective requirements. *See id*. MBUSI has not established that the hiring criteria it relies upon to disqualify Brown was either objectively verifiable or easily obtainable or otherwise within Brown's possession, and Brown need not satisfy this portion of the *prima facie* case. *See Kidd*, 731 F.3d at 1204.

### c. The open MBUSI positions were filled by non-White employees who were substantially younger than Brown.

All the positions at issue were filled by Black employees, and so Plaintiff can meet the fourth element of her *prima facie* case for her race discrimination claims. Plaintiff can also meet the fourth element of her *prima facie* case for her age claims because all the successful applicants were at least six years younger, and thus "substantially younger," than Brown. *See Carter v. City of Miami*, 870 F.2d 578, 582–83 (11th Cir. 1989) (holding three years age difference meets "substantially younger" requirement).[7] Thus, Brown has demonstrated a *prima*

---

[7] As noted above, Brown may only challenge the Jackson, Ellis, and Roberts hires based on age; however, Walls, Harden, and Jefferson were also substantially younger than Brown.

*facie* case of race and age discrimination, and MBUSI must offer a legitimate, non-discriminatory reason for each of the contested hires.

### 3. MBUSI offered a legitimate, non-discriminatory reason for each hire.

MBUSI's burden to articulate a legitimate, nondiscriminatory reason for its employment decisions can involve no credibility determination and is "exceedingly light." *See St. Mary's Honor Ctr.*, 509 U.S. at 509; *Perryman*, 698 F.2d at 1142. MBUSI must only articulate a "clear and reasonably specific" non-discriminatory basis for its actions. *See Tex. Dep't of Cmty. Affs.*, 450 U.S. at 258. The burden at this stage is one of production, rather than of proof. *Perryman*, 698 F.2d at 1142. MBUSI offers the following legitimate, non-discriminatory reasons for each contested hire:

- Spring 2017 – MBUSI hired Harden. As an NAOS TRS, Harden showed strong initiative, had an energetic attitude, and was proactive in solving problems. He also had a strong HR background, including serving as a career counselor in the military. As with the comparison to Walls, in this selection, Brown was viewed as someone who demonstrated less initiative and was less available to plant employees than Harden.

- July 2017 – MBUSI hired Jackson. As an NAOS TRS, Jackson had sought feedback about how to improve after not having previously been hired into the MBUSI TRS role. She implemented the feedback she received and

22

improved her performance, which contributed to the decision to hire her into the MBUSI role.  In contrast, Brown had not taken the initiative to seek feedback from Cooper to improve her performance.

- January 2018 – MBUSI hired Ellis, who had extensive HR and automotive experience outside of MBUSI.  As with Jefferson, Olive was interested in the external perspective Ellis would bring to MBUSI.  Compared to Ellis, Brown would not have brought a new, outside perspective to the role.

- June 2018 – MBUSI hired Roberts, an MBUSI employee who had previously held the TRS role.  Consistent with its general policy, MBUSI gave priority to Roberts as an "internal" candidate.  Further, Olive was familiar with Roberts's past performance in the TRS role and was excited for him to return to that position.  Compared to Roberts, Brown was considered an "external" candidate.  Roberts's selection filled the open position before it opened to external candidates.

MBUSI offers clear and specific reasons to support its decision for each challenged hire.  These reasons are well within MBUSI's business judgment regarding the candidates' qualities, and MBUSI has established legitimate, non-discriminatory reasons for each hire.  Therefore, Brown must demonstrate these reasons are pretext for discrimination.

23

### 4. There is no evidence to demonstrate MBUSI's legitimate, non-discriminatory reasons are pretextual.

To rebut MBUSI's legitimate, non-discriminatory reasons for each hire and demonstrate these reasons are pretextual, Brown must demonstrate both (1) MBUSI's reasons were false *and* (2) discrimination was the real reason. *See St. Mary's Honor Ctr.,* 509 U.S. at 515. Brown cannot simply argue she was better qualified than the candidates who were ultimately selected, but she must instead demonstrate the disparities between their qualifications and her own were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *See Bailey v. City of Huntsville*, 517 F. App'x 857, 863 (11th Cir. 2013) (internal citation omitted). Neither can she show pretext by simply substituting her business judgment for MBUSI's. *See id.* at 864. Where, as here, "the proffered reason is one that might motivate a reasonable employer," Brown must directly rebut that reason; she cannot simply quarrel with MBUSI's reasoning. *See id.* Even if she can demonstrate MBUSI's reasons are false, Brown must also show the hiring decisions were in fact motivated by age or race. *See St. Mary's Honor Center*, 509 U.S. at 515.

Brown does not meet this burden. She complains MBUSI's reasons are vague, subjective, and unsupported by documentation, but MBUSI gave specific

feedback about each candidate's strengths relative to Brown.[8]   Brown does not challenge the qualifications of each selected candidate or compare their qualifications to her own.   She is required to make at least some specific comparison between each candidate and herself but she has not done so. Consequently, the court cannot conclude Brown's qualifications are so superior "that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate(s) selected over" Brown.   *See Bailey*, 517 F. App'x at 863. Brown also complains that MBUSI's reasons are pretextual because she was never disciplined or offered feedback about the weaknesses in her job performance.   But, a lack of formal discipline does not necessarily demonstrate Brown had superior qualifications, particularly where there is no evidence regarding the disciplinary history of the selected candidates.   Nor does Brown's lack of formal discipline necessarily require MBUSI to hire/promote her.

Joiner's testimony that Brown was helpful and visible on the plant floor and worked with him to resolve any issues he brought to her does not help Brown's claim of pretext, and it does not lead to a conclusion that Brown was substantially more qualified than the other candidates.   MBUSI does not claim Brown was never on the plant floor and never resolved issues for MBUSI employees.   Rather, in

---

[8] Some of the proffered reasons for selection do not appear to be documented, but Brown cites no authority finding a lack of documentation permits a finding of pretext.

comparison to the other TRSs, MBUSI believed Brown spent *less* time on the plant floor and took *less* initiative.  Joiner's testimony does not rebut MBUSI's proffered reasons for each of its hires.

Thus, Brown has not shown the disparities between her own qualifications and those of the selected candidates were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *See Bailey*, 517 F. App'x at 863.  Moreover, Brown has introduced no evidence to permit the court (or any factfinder) to find that race and/or age were the true motives for MBUSI's hire of each candidate. Accordingly, Brown has failed to show MBUSI's proffered reasons for not selecting her for the various open positions were a pretext for race and age discrimination.

For the foregoing reasons, there are no genuine issues of material fact concerning Brown's race and age discrimination claims (Counts One and Two), and MBUSI is entitled to judgment as a matter of law.

### B. Retaliation

Title VII makes it unlawful for "an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or

hearing under this subchapter." 42 U.S.C. § 2000e–3(a).   Both the ADEA and

AADEA contain similar anti-retaliation provisions.   *See* 29 U.S.C. § 623(d); Ala.

Code § 25-1-28.   To establish a *prima facie* case of retaliation under Title VII, §

1981, the ADEA or the AADEA, Brown must prove: (1) she engaged in statutorily

protected conduct; (2) she suffered an adverse employment action; and (3) the

adverse action was causally related to the protected expression.   *See Butler v. Ala.

Dep't of Transp.*, 536 F.3d 1209, 1212–13 (11th Cir. 2008) (Title VII and § 1981);

*King v. CVS Caremark Corp.*, 2 F. Supp. 3d 1252, 1264 (N.D. Ala. 2014) (ADEA);

*Robinson*, 964 So. 2d at 1228 (adopting ADEA evidentiary framework to AADEA

claims).   To demonstrate a causal connection, a plaintiff must show his "protected

activity was a but-for cause of the alleged adverse action by the employer." *Univ.

of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).   The causal connection

may be shown by temporal proximity alone, but a plaintiff taking this route must

show the events occurred "very close" in time.   *See Higdon v. Jackson*, 393 F.3d

1211, 1220 (11th Cir. 2004).   "If there is a substantial delay between the protected

expression and the adverse action in the absence of other evidence tending to show

causation, the complaint of retaliation fails as a matter of law." *Debose v. USF

Board of Trustees*, 811 F. App'x 547, 557 (11th Cir. 2020) (noting a three-to-four-

month delay is too large a gap to prove causation).

27

Brown claims she continued to be denied promotions by MBUSI after she complained to Shiew about discrimination.  It appears this complaint occurred in or around December 2017, following MBUSI's announcement it would hire Ellis for the open TRS position, but certainly after MBUSI's November 2017 decision to hire Ellis.  Brown's first EEOC complaint was also filed around this time, on December 22, 2017.  Consequently, the only promotion at issue in the retaliation context is the June 2018 Roberts hire.  The time gap between the December 2017 complaints and the June 2018 Roberts hire is too long to establish a causal connection, and Brown offers no other evidence to link her complaints to the fact that she was not selected for the position ultimately filled by Roberts.  Because there is no evidence of a causal connection, Brown cannot establish a *prima facie* case of retaliation.  Even if Brown could show causation, the analysis above applies equally here: MBUSI offered a legitimate, non-retaliatory reason for hiring Roberts, and Brown failed to rebut MBUSI's reasoning with any evidence that the reasons were pretext for discriminatory or retaliatory conduct.  *See, e.g., Debose*, 811 F. App'x at 558.

Brown may have again complained about discrimination in September 2018; however, Brown alleges no adverse action or position for which she was not hired occurring after this date.  Therefore, she cannot show that this complaint resulted in retaliatory activity.

For the foregoing reasons, there are no genuine issues of material fact concerning Brown's retaliation claims (Counts Three and Four), and MBUSI is entitled to judgment as a matter of law.

### C. Damages

As discussed above, Brown has failed to show MBUSI's reasons for not selecting Brown for each of the open positions were pretext for race or age discrimination.  MBUSI is consequently entitled to judgment as a matter of law for Brown's race and age discrimination claims under Title VII, § 1981, the ADEA, and the AADEA.  Similarly, Brown failed to demonstrate a *prima facie* case of retaliation for her complaints of race and age discrimination, and MBUSI is entitled to judgment as a matter of law for Brown's retaliation claims.  Because these rulings are fully dispositive of Brown's claims, it is unnecessary to address MBUSI's argument that Brown has not proven damages.

### IV.    Conclusion

For all the foregoing reasons, viewing the facts in the light most favorable to Brown, there are no genuine issues of material fact, and MBUSI is entitled to judgment as a matter of law.  Accordingly, MBUSI's motion for summary judgment will be granted in its entirety and all of Brown's claims will be dismissed with prejudice.  A separate order will be entered.

**DONE** and **ORDERED** this 4th day of March, 2022.


STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE